[S. F. No. 11646. In Bank.—October 27, 1927.]

## H. S. BRIDGE, Respondent, v. MARY A. RUGGLES, Appellant.

[1] PROMISSORY NOTES—CONSIDERATION—PRE-EXISTING INDEBTEDNESS —ACCOMMODATION INDORSER.—A pre-existing indebtedness of the maker of a promissory note is a sufficient consideration for the note and for the indorsement of an accommodation indorser, as is an extension of time or forbearance to sue; and under the provisions of section 3110 of the Civil Code an accommodation indorser is liable to the holder of a promissory note for value.

[2] EVIDENCE—HEARSAY—EXCEPTION—FEELINGS AND MENTAL STATE.— It is a well-settled exception to the hearsay rule that when the belief, feeling, and mental state of a person at a particular time are material to the issue, evidence of such person's declarations indicative of his then mental state are admissible, and it is immaterial whether or not such declarations were made in the presence of the adverse party or what the character of the litigation may be so long as evidence of such state of mind is material to the issue. Such evidence is admissible, not to prove the truth of the statements made, for which it is incompetent, but for the purpose of supporting the issue to which proof of state of mind is material.

[3] DURESS—DEFINITION—SECTION 1569, CIVIL CODE.—Under section 1569 of the Civil Code, "duress" is defined as (a) the unlawful confinement of the persons mentioned in the first subdivision of the section, (b) the unlawful detention of the property of any such person, and (c) the "confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive."

[4] MENACE—DEFINITION—SECTION 1570, CIVIL CODE.—Under section 1570 of the Civil Code, "menace" consists, among other things, of a threat of "injury to the character of" the persons mentioned in the section defining duress; and it is well settled generally that a threat of arrest on a criminal charge in aid of the collection of a debt constitutes menace, which in criminal law is extortion and amounts to a felony, and in civil law warrants rescission and

---

1. Forbearance to sue as consideration for a promise, note, 60 Am. Dec. 524. See, also, 19 Cal. Jur. 839, 841; 3 R. C. L. 935, 940; 19 Cal. Jur. 881.
2. See 10 Cal. Jur. 1073, 1074; 10 Cal. Jur. 1078; 1 R. C. L. 481.
3. See 6 Cal. Jur. 66; 9 R. C. L. 716.
4. See 6 Cal. Jur. 67; 3 R. C. L. 1103; 9 R. C. L. 714.

may be set up in defense of an action on debt; and the defense is available even though the person threatened is subject to a criminal charge, as a threat of arrest is a gross perversion and abuse of criminal process, and no court will permit it to be used to enforce a settlement of a civil action claim.

[5] PROMISSORY NOTES—EXECUTION—THREAT OF ARREST—STATE OF MIND OF ACCOMMODATION INDORSER—INADMISSIBLE EVIDENCE.—In an action upon a promissory note against the maker and his accommodation indorser, in which the latter sets up the defense, among others, that the execution and delivery of the note by the maker and the indorsement by the indorser were obtained by duress, consisting of a threat to arrest the maker, evidence to show the state of mind of the accommodation indorser was immaterial to any issue presented.

[6] ID.—COMPLAINT TO DISTRICT ATTORNEY—LACK OF FOUNDATION FOR EVIDENCE—CUSTOM.—In such a case, in which the plaintiff denied that he had lodged a complaint against the maker of the note with the district attorney's office, a citation addressed to the latter and signed by a deputy in the office of the warrant and bond department of the district attorney's office, in the absence of proof that the document was made out in the presence of the plaintiff and at his direction, is inadmissible, as is evidence of the custom of such office in issuing such citations, such evidence being offered to contradict the plaintiff.

(1) 8 C. J., p. 215, n. 36, p. 236, n. 22.   (2) 22 C. J., p. 279, n. 31. (3) 13 C. J., p. 396 n. 40.   (4) 13 C. J., p. 400, n. 78.   (5) 8 C. J., p. 1027, n. 11.   (6) 40 Cyc., p. 2723, n. 29.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Louis H. Ward, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. P. Henshall and Robert R. Moody for Appellant.

Edwin T. Cooper and Charles T. White for Respondent.

SHENK, J.—This is an appeal from a judgment in an action by the payee against the maker and indorser of a promissory note for four thousand dollars. The maker, L. D. Allen, defaulted in the action, and after a trial of the issues framed by the complaint and the amended answer of the indorser, Mary A. Ruggles, the trial court, sitting without a jury, gave judgment for the plaintiff for the prin-

cipal sum, interest and costs. From that judgment the defendant, Mary A. Ruggles, appeals.

The fact of the making of the note, dated August 14, 1922, and the signature of Mrs. Ruggles as accommodation indorser are undisputed. The appellant, however, contends (1) that there was no consideration for the note; (2) that there was no consideration for the indorsement; and (3) that the execution and delivery of the note by defendant Allen and the indorsement of Mrs. Ruggles were obtained by duress.

At the trial the evidence disclosed that Mrs. Ruggles had advanced to Allen about twenty-five thousand dollars to be used in real estate transactions, and that Allen had been indebted for some time to plaintiff, Bridge, in the sum of four thousand dollars, to cover which the note in question was given. [1] Any question as to the sufficiency of the consideration for the note and for Mrs. Ruggles' signature as accommodation indorser may be dismissed at once, as the pre-existing debt was sufficient consideration for the note (Civ. Code, sec. 3106); and an extension of time or forbearance to sue was also a sufficient consideration. (*Whelan* v. *Swain*, 132 Cal. 389 [64 Pac. 560]; *Mahana* v. *Van Alstyne*, 179 Cal. 725 [178 Pac. 853].) The court found on sufficient evidence that the plaintiff was a holder for value, and under the provisions of section 3110 of the Civil Code an accommodation indorser is liable to such a holder as an indorser.

In her answer the defendant Ruggles alleged that on the eleventh day of August, 1922, Allen called upon her and told her that plaintiff had procured the issuance of a citation for him to appear before the warrant and bond department of the district attorney's office to show cause why a warrant should not be issued for his arrest on a criminal charge; that if said warrant was issued it would immediately stop all his work in the matter of subdividing and improving the properties he had purchased with moneys loaned by Mrs. Ruggles, and that there would be a complete and irretrievable loss of the moneys so expended unless he executed and delivered a note indorsed by Mrs. Ruggles to said Bridge forthwith to prevent him from carrying out his threat to have him arrested; that said Bridge would grant no further time to pay the indebtedness; that the plaintiff

knew that Mrs. Ruggles had advanced a large sum of money to Allen for the above purposes; that by reason of said threats communicated to her by said Allen and by reason of the fear and oppression thereby engendered, and her belief that the arrest of Allen would cause her great and irreparable financial loss, she was deprived of the free exercise of her will; and that by reason of the duress, compulsion, intimidation, and coercion to which she was so subjected, and not otherwise, she indorsed said note.

The court ordered judgment for the plaintiff and later made its findings of fact and conclusions of law resolving the disputed questions of fact in favor of the plaintiff. Therein the court found and decided that Allen did not sign the note nor did Mrs. Ruggles indorse the same as the result of duress or compulsion. It is not contended that the evidence was insufficient to support the findings, but it is insisted that the court committed prejudicial error in two instances: First, it is urged that such error was committed in granting the motion to strike out the testimony of Mrs. Ruggles and Mrs. Louise Thomas relating to a conversation between Mrs. Ruggles and Allen two or three days before the note was signed and indorsed. This conversation took place at the home of Mrs. Ruggles, not, however, in the presence of the plaintiff. Concerning it Mrs. Ruggles testified as follows:

"Mr. Allen came to my home in the morning, and he said, 'Well, I fear trouble this morning. He—Mr. Bridge—has a citation out for my arrest, and unless I satisfy him in some way, by having you sign a note for me, why, he is going to throw me in jail'; and I said, 'Oh, he will never think of doing a thing like that, Mr. Allen.' And he said, 'Yes, he would do it; that is just what he is going to do,' and he said, 'If I am in jail, why I can't do anything in real estate.' I said, 'That is quite true, Mr. Allen,' and he said, 'Then, we are all going to lose—you are going to lose all the money you put in there,' and he walked around the room in a terrible state of mind, and he had me very much worked up, and I said, 'My goodness, you must try to do something about it, Mr. Allen,' and he said, 'No, he won't let me off; I have to have that note signed by you,' and then he said 'If you will come down with me and sign that note.' And I said, 'Why, yes, I will go down.'

"Q. Did Mr. Allen at that time say anything to you regarding the conversation he had with Mr. Bridge prior to going to your house? A. Yes . . . he said that he had a talk with Mr. Bridge, and Mr. Bridge wanted me to sign that note, or he would have him arrested.

"Q. Did he say whether or not if Mr. Bridge knew that he was going up to your house? A. He said Mr. Bridge knew he was coming up.

"Q. What did he say about it?ˋ A. Well, he wanted— he was talking to me about going back there and signing that note for him.

"Q. Did you believe those statements made to you by Mr. Allen? A. Why, I certainly did."

The testimony of Mrs. Thomas, by deposition, corroborated that of Mrs. Ruggles. The testimony of both was received in evidence subject to a motion to strike it out. Before the close of the trial the court granted the plaintiff's motion to strike it from the record. The plaintiff, as a witness in his own behalf, denied that he had ever threatened the arrest of Allen, and denied that he had made the statements attributed to him by Allen concerning the alleged threatened arrest. It is the plaintiff's position that the evidence of Mrs. Ruggles and Mrs. Thomas was properly stricken as hearsay. It is the contention of the defendant Ruggles that as said evidence was offered, not for the purpose of proving the truth or falsity of the statements of Allen to her, but for the purpose of proving her state of mind at the time she indorsed the note, it was competent as proof for the latter purpose.

[2] It is a well-settled exception to the hearsay rule that when the belief, feeling, and mental state of a person at a particular time is material to the issue, evidence of such person's declarations indicative of his then mental state are admissible, and it is immaterial whether or not such declarations were made in the presence of the adverse party or what the character of the litigation may be so long as evidence of such state of mind is material to the issue. (*Adkins* v. *Brett,* 184 Cal. 252, 255, and 256 [193 Pac. 251]; *Estate of Carson,* 184 Cal. 437, 445 [17 A. L. R. 239, 194 Pac. 5]; *Kyle* v. *Craig,* 125 Cal. 107 [57 Pac. 791]; 3 Wigmore on Evidence, sec. 1790; Code Civ. Proc., secs. 1850, 1870, subd. 7; see 10 Cal. Jur., pp. 1073, 1074.) Such

evidence is admissible, not to prove the truth of the statements made, for which it is incompetent, but for the purpose of supporting the issue to which proof of state of mind is material. (*Adkins* v. *Brett, supra;* 10 Cal. Jur., p. 1078 et seq.) It becomes then of vital importance to determine whether proof of the state of mind of Mrs. Ruggles was relevant to any issue presented. The issue to which it is claimed to be competent is that of duress. In this connection it is alleged that the "plaintiff procured the said alleged note to be executed and delivered by the defendant, L. D. Allen, and indorsed by this defendant (Mrs. Ruggles) by duress." [3] Section 1569 of the Civil Code defines "duress" as (a) the unlawful confinement of the persons mentioned in the first subdivision of the section, (b) the unlawful detention of the property of any such person, and (c) the "confinement of such person, lawful in form, but fraudulently obtained, or fraudulently made unjustly harassing or oppressive." It is readily perceived that the allegations of the answer do not bring the issue within the scope of duress as thus defined, for the reason that none of the acts of which duress is there declared to consist is alleged. Nor did the proof received or offered tender an issue of duress as thus defined. Nor did Allen or Mrs. Ruggles come within the classes mentioned in the section. [4] If the facts alleged might be said more appropriately to justify the charge of "menace," we find that term defined in section 1570 of the Civil Code, and the defendant Ruggles has not presented an issue either by pleading or proof coming within that definition. Under that section "menace" consists, among other things not material here, of a threat of "injury to the character of" the persons mentioned in the section defining duress. Although neither the defendant Allen nor the defendant Ruggles comes within the literal classification of the persons so defined, it is well settled generally that a threat of arrest on a criminal charge in aid of the collection of a debt constitutes menace. In criminal law it is extortion and amounts to a felony (Pen. Code, secs. 518–520). On the civil side it warrants rescission and may be set up in defense in an action on debt, and the defense is available even though the person threatened be subject to a criminal charge, as a threat of arrest is a gross perversion and abuse of criminal process, and no court

will permit it to be used to enforce a settlement of a civil claim. (*Morrill* v. *Nightingale,* 93 Cal. 452 [27 Am. St. Rep. 207, 28 Pac. 1068]; 6 Cal. Jur. 67.) **[5]** But the alleged threat of arrest in the present case was directed not to Mrs. Ruggles but to Allen. Notwithstanding the default of Allen and the consequent waiver by him of the defense of menace, and assuming that it would be competent for Mrs. Ruggles to allege and prove as a complete defense as to herself that the threatened arrest of Allen had rendered the note void, we are unable to see how proof of her state of mind at the time of the indorsement would be competent to prove menace practiced on Allen. Mrs. Ruggles was not threatened with arrest, and the evidence excluded was offered to prove her state of mind and not the state of mind of Allen, who was alleged to have been threatened. As before stated, the court found on sufficient evidentiary proof that Allen was not so threatened. The cases relied on by appellant proceed on the proposition that it is competent to show a state of mind of the person on whom duress, menace, undue influence, etc., are alleged to have been practiced to prove the effect on such person of the action threatened or accomplished, but no authority has been cited holding that the state of mind of another person, against whom no threat of arrest is made, is relevant to the issue. We therefore conclude, on the record presented, that proof of the state of mind of Mrs. Ruggles was incompetent evidence on the issue tendered, and that no error was committed in excluding the same.

**[6]** The witness Sheridan, a deputy in the office of the warrant and bond department of the district attorney's office, produced from his office records a copy of a document dated at San Francisco, August 3, 1922, addressed to L. D. Allen, signed "Sol. N. Sheridan," and reading in part as follows: "Kindly call at this office on the 7th day of August, 1922, at 11 o'clock a. m., relative to a complaint which has been made against you by H. S. Bridge." The plaintiff denied that he had lodged the complaint. At the time of the trial in February, 1925, Sheridan testified that he did not remember that the plaintiff had called at his office in August, 1922, to request this citation, and Allen testified that the citation had never been served upon him. This document was received in evidence, but there was no

showing that it had ever been issued. For the purpose of proving that the plaintiff had applied for the citation, the appellant sought to show that it was the custom of the warrant and bond department to insert in the citation the name of the person who applied for the same. The court excluded evidence of the alleged custom, and this is the second specification of error. The document and the proof of the alleged custom were offered for the purpose of impeaching the testimony of the plaintiff. If it was intended to prove that the document was made out in his presence and at his direction, no foundation for its introduction was laid as required by section 2052 of the Code of Civil Procedure. Furthermore, no satisfactory reason has been advanced in support of proof of a custom in the district attorney's office which would serve as a substitute for proof of what was actually done at the time in question in this particular case in order that the plaintiff be bound.

We find no error in the record. The findings of the trial court, which we do not feel at liberty to disturb, resolve the controverted questions of fact in favor of the plaintiff. The judgment must, therefore, be affirmed, and it is so ordered.

Waste, C. J., Curtis, J., Langdon, J., Richards, J., and Seawell, J., concurred.

Rehearing denied.