20030. HERRINGTON *v.* HERRINGTON *et al.*

STEPHENS, J. 1. Where, after the death of an intestate, the heirs at law, who were her children, met and agreed upon a division among themselves of the real estate which had belonged to her, and where at the time no division was made of any personal property belonging to her estate, and no agreement was made respecting a division of certain personal property consisting of household furnishings, farming material, stock, etc., which had been located on the home place of the intestate where she and some of these heirs had lived together, and which after her death remained there in the possession of the heirs residing there, and was in their possession there with the knowledge of all the heirs when the agreement dividing the real estate was made, and where one of the heirs at law had, a number of years prior to the death of the intestate, moved away from the home place and had lived to himself, and where other heirs remained on the home place and lived there with the intestate and themselves conducted farming operations there,

and where, after the execution of the agreement dividing the real estate, the personal property, which at the time was located on the home place, was left there in the possession of these heirs, and where the heir who had not lived upon the home place made no claim as an heir at law to any of this personalty until a period of about ten years had elapsed after the execution of the agreement dividing the real estate, the inference is authorized that he had relinquished to these heirs all his right, title, and interest in and to the personalty.

2. Where the plaintiff alleged in the petition that it was agreed between him and the defendants as heirs at law of the intestate to divide the real estate among all the heirs at law, and that the personal property of the intestate, who was the mother of the plaintiff and the defendants, should not be divided until after the death of the father of the plaintiff and the defendants, who also was living at the home place, and that after the father's death the personalty should be divided, and where the defendants in their plea denied that the personalty had belonged to the intestate and alleged that it was the property of the defendants, and denied that any agreement to divide the personalty after the death of the father was made as alleged by the plaintiff, but did allege in their plea that the personal property was "to remain on the home place and belong to these defendants, and it was so understood at the time of the division of said estate," a charge by the court that it was contended by the defendants that the heirs at law "entered into an agreement whereby certain divisions were made of the estate, and that they [the defendants] were to have the personal property in question," is not error prejudicial to the plaintiff as being an inaccurate statement of the defendants' contention. Especially is this true where, immediately preceding this excerpt from the charge of the court excepted to, the court charged the jury that the defendants contended that the personal property in their possession at the time of the death of the intestate belonged to them. Nor was it error prejudicial to the plaintiff as being an inaccurate statement of the defendants' contentions, and as being unsupported by the evidence, where the court charged that if there was a division among the parties to the case whereby "certain property and money" belonging to the intestate was to belong to the defendants, there could be no recovery for the plaintiff.

3. Although no issue was made by the pleadings or the evidence as to whether the personal property in question belonged to the father, it was nevertheless not prejudicial to the plaintiff for the court to charge that if the personal property belonged to the father, there could be no recovery for the plaintiff. The plaintiff was not asserting any title to the property as heir at law to his father.

4. Since the evidence presented an issue of fact as to whether the personal property in question had belonged to the intestate or was the property of the defendants, and also presented an issue of fact as to whether, if the property was the property of the intestate, there was an agreement between the plaintiff and the defendants, after the death of the intestate, that the property should be held intact by the defendants during the father's lifetime, and, after the death of the father should be divided among all the heirs, a verdict in favor of the defendants necessarily

amounted to a finding that the property belonged to the defendants, either by the act of the plaintiff in relinquishing title thereto to them, or by title acquired otherwise. The verdict necessarily amounted to a finding that the defendants did not wrongfully intermeddle with and convert to their own use the personal property of the intestate, and therefore that the defendants were not executors de son tort. Therefore, even if the charge was erroneous in its definition as to what constitutes an executor de son tort, it was necessarily harmless to the plaintiff and could not have influenced the verdict which was found for the defendants.

5. A charge of the court, that it was agreed between the parties that if "certain property and money" belonging to the mother should belong to the defendants, there could be no recovery, is not subject to the objection that it was prejudicial to the plaintiff in that the court failed to distinguish between personal and real property. Since the pleadings and the evidence presented no issue as to whether there was any liability by the defendants predicated upon the division of the real estate, the jury necessarily must have inferred that in this part of the charge the court, in making reference to "property," necessarily had reference to personal property. This charge was in no wise prejudicial to the plaintiff.

6. A charge to the jury which contains a complete and correct proposition of law applicable to the case is not error in that it fails to contain another appropriate and correct proposition of law. *Peeples* v. *Rudulph*, 153 *Ga.* 17 (2) (111 S. E. 548). Where the court charged the jury that, in the event of an agreement between the heirs that personal property belonging to the intestate was to remain in the hands of the father until his death, the burden rested upon the plaintiff to show that the property was in existence at the time of the death of the father, and that if, by the agreement between the heirs, the property belonged to the father during his lifetime, and if he consumed any of it or disposed of it, the defendants would not be liable to account therefor, this charge, where not excepted to as being an incomplete and incorrect proposition of law applicable to the case, was not error in that it failed to contain an instruction to the jury that if the property of the intestate had been converted into other property by the father and this property was left by him at the time of his death, the plaintiff might recover.

7. The plaintiff can not complain of a charge to the effect that if the jury believed that the agreement as contended for by the plaintiff was entered into by the parties, the action was not barred by the statute of limitations. The charge being favorable to the plaintiff, it certainly was not error prejudicial to him.

8. The provisions of section 4627 of the Civil Code of 1910 were not applicable to any of the issues presented, and the court did not err in refusing a request to give in charge the provisions of this code section.

9. Since the court charged the jury that if there was an agreement that the "property and money" sued for belonged to the intestate at the time of her death, and that it was agreed that "it was then to be divided" between the heirs, the plaintiff would be entitled to recover his share thereof, it was not error for the court to refuse certain requests

by the plaintiff to charge respecting the effect of the alleged agreement upon any money which may have belonged to the intestate.

10. The other requests to charge made by the plaintiff, in so far as they contain pertinent and appropriate matter, were covered by the charge of the court, and the refusal of the court to give the requested instructions was not error prejudicial to the plaintiff.

11. It is not error to reject testimony of a witness, where substantially the same testimony of the same witness is elsewhere admitted. It was not error for the court to reject testimony of the plaintiff as a witness, offered by himself, that he was acquainted with one of the defendants, had seen him frequently, several times a week, had known him for years and since his boyhood and up to the time of the father's death, and that during this time the defendant had not been able or inclined to work regularly, and had not done so, and had not made more than $200 or $300 per year, and that the defendant did not have any money of his own other than this, where the witness, at another time during the trial, was permitted to testify that he lived within a mile of this defendant "during all these years," that sometime this defendant would have a cotton patch, and a watermelon patch, but never made a regular farmhand, that he worked in a store for a while, about two or three months, that he never had any other job, that he sold wagonloads of watermelons and never had any income, and that, if he ever had any money, the witness never knew it. The rejected testimony was substantially the same as that which was admitted, being to the effect that the defendant, to the knowledge of the witness, was not very industrious, was incapable, and was unable to earn, and did not possess, much money.

12. The statement by the court, made when rejecting the testimony referred to in the preceding paragraph, that it was immaterial that this defendant had made nothing, but that it would have to appear also that the father had made nothing and that there was no other source from which this defendant could obtain any money, was not an expression of opinion on the facts, and was not of such a nature that it could have influenced the jury prejudicially to the plaintiff.

13. Since there was admitted evidence that certain money had been deposited in a designated bank shortly after the death of the intestate, it was not error prejudicial to the plaintiff for the court to exclude from evidence the deposit slip showing the deposit of this money.

14. Since it does not appear that certain money which the defendants had put on deposit in a bank belonged to, or had been derived from property which belonged to, the intestate, it was not error prejudicial to the plaintiff for the court to reject testimony of the plaintiff to the effect that the plaintiff had ascertained that the defendant had deposited certain money in the bank, or had discovered something which caused him to make an investigation with reference to this money. Likewise it was not error to reject as evidence a deposit slip and a bank certificate of deposit of this money.

15. It was not error to admit in evidence the fact that one of the defendants had made a certain amount of money per year out of the place which this defendant owned.

16. The court clearly, and fairly to the plaintiff, instructed the jury as to the contentions of both parties to the case and as to the law applicable to the issues made by the evidence, and did not err in the exclusion or rejection of testimony, or otherwise. The evidence supports the verdict found for the defendants, and no error appears.

*Judgment affirmed. Jenkins, P. J., and Bell, J., concur.*

DECIDED OCTOBER 10, 1930.

*F. A. Cantrell, J. M. Lang,* for plaintiffs.
*J. G. B. Erwin,* for defendant.